UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

GOTFRIED JEAN,

                                                          Plaintiff,    COMPLAINT AND
                                                                                     JURY DEMAND
                  -against-

JOSEPH KRAUSS, CORRECTION OFFICER NATHAN    Docket No.
SORRELL,
                                                                                       ECF CASE

                                                          Defendants.

-------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief for the violation of his rights under the Eighth and Fourteenth Amendments secured by 42 U.S.C. §1983.

2. The claim arises from an incident on June 1, 2010, in which a Food Services Administrator and a Correction Officer of the New York State Department of Correctional Services ("DOCCS") at Attica Correctional Facility conspired to and actually physically and sexually assaulted plaintiff, who was a man in their custody at the time of the assault. The Food Services Administrator, Mr. Joseph Krauss, resigned and pled guilty to Sexual Abuse in the Second Degree and Official Misconduct on February 7, 2012.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 28 USC §1331 and 42 USC §§1983 and 1988.

1

5. The amount in controversy exceeds $75,000.00 excluding interest and costs.

6. Venue is laid within the United States District Court for the Western District of New York in that a substantial part of the events giving rise to the claim occurred within the boundaries of the Western District of New York.

## PARTIES

7. Plaintiff, Gotfried Jean was incarcerated in the custody of the DOCCS at Attica Correctional Facility on the date of the incident.

8. Correction Officer Nathan Sorrell, upon information and belief, was an employee of the DOCS on June 1, 2010 and was acting in the capacity of an agent, servant and employee of the State of New York, and acting under color of state law. On information and belief, Defendant Sorrell worked at Attica Correctional Facility at the time of the incidents alleged in this complaint, and participated or witnessed and failed to intervene in the assault of plaintiff that took place on June 1, 2010 and is sued in his individual capacity.

9. Food Services Administrator Joseph Krauss, upon information and belief, was an employee of the DOCS on June 1, 2010 and was acting in the capacity of an agent, servant and employee of the State of New York, and acting under color of state law. On information and belief, Defendant Krauss worked at Attica Correctional Facility at the time of the incidents alleged in this complaint, and participated or witnessed and failed to intervene in the assault of plaintiff that took place on June 1, 2010 and is sued in his individual capacity.

10. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of

the City and State of New York.

## FACTUAL ALLEGATIONS

11. On June 1, 2010, at approximately 1:30 p.m., Mr. Jean was incarcerated at Attica Correctional Facility.

12. He was working in the mess hall immediately prior to the incident under the supervision of defendants.

13. Mr. Jean was asked to empty the garbage cans towards the back area of the mess hall.

14. In the back area of the mess hall, Correction Officer Sorrell and Food Services Administrator Joseph Krauss then both started hitting him on the back of his head and body.

15. Mr. Jean curled up on the floor.

16. Defendants started kicking Mr. Jean.

17. Defendants physically assaulted Mr. Jean with hitting and kicking for about five minutes.

18. Defendants' physical assault left Mr. Jean with bruising to the back of his head and body.

19. Defendants asked Mr. Jean whether he was going to "get with the program."

20. Defendant Krauss then unzipped his pants and exposed his genitalia to Mr. Jean.

21. Defendant Sorrell grabbed the back of Mr. Jean's head and pushed it into Krauss' crotch area.

22. Defendant Sorrell continued to hold Mr. Jean's head and guide it while Mr Jean was forced to perform oral sex on Krauss.

23. Defendant Sorrell released his grip on Mr. Jean's head and Mr. Jean felt something penetrate his anus, at which point Sorrell told Mr. Jean "he stunk", guided his head back to Krauss' genitalia and told Mr. Jean to "hurry up".

24. Krauss ejaculated in Mr. Jean's mouth and Mr. Jean spit up the semen on his shirt, which he saved for investigators.

25. After Krauss and Sorrell physically and sexually assaulted Mr. Jean, Krauss told Sorrell to take a box to the other side of the mess hall and Mr. Jean obeyed.

26. Sorrell then wrote Mr. Jean a ticket for "smuggling" and Mr. Jean was punished with "keep-lock" or isolation as a result of Sorrell's false statements.

27. That was Mr. Jean's first ticket in state custody, where he had been since 2000.

28. Sorrell and Krauss conspired to physically assault, sexually assault, and make false statements to cover up their criminal and unconstitutional misconduct.

29. As a result of defendants' sexual assault, Mr. Jean suffered from extreme anxiety and depression, insomnia and weight loss.

30. Mr. Jean was held in "keep lock" solitary based on Sorrell's false statements for 3 days and was deprived of recreation based on Sorrell's false statements for 10 days.

31. As a result of Sorrell's false report, he was also prohibited from returning to the mess hall for work.

32. While Mr. Jean was at Attica Correctional Facility, Officer Sorrell threatened him about reporting the incident repeatedly, remarking that he had friends "everywhere" and that he would know about any report he made, making Mr. Jean fear for his life if he were to file any grievances or report the incident.

33. As soon as Mr. Jean was in a different facility, Upstate Correctional Facility, he

injury to Mr. Jean.

44. By failing to intervene in order to stop the assault, the defendants demonstrated a deliberate indifference to a substantial risk of serious harm to Mr. Jean.

45. As a result of this assault Mr. Jean suffered from multiple bruises, insomnia, weight loss, extreme anxiety, and depression.

46. At no time did Mr. Jean assault or attempt to assault any officer, nor did he present any threat or perceived threat to the personal safety of any officer or to the security of the jail so as to warrant the repeated application of blows.

47. At all times during the events described above, the Corrections Officer and the Food Services Administrator were engaged in a joint venture and formed an agreement to violate Mr. Jean's rights. They assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of each other against Mr. Jean.

48. During all of the events above described, defendants acted maliciously and with intent to injure Mr. Jean.

## DAMAGES

49. As a direct and proximate result of the acts of defendants, Mr. Jean suffered the following injuries and damages:

   a. Violation of his right to Due Process of Law under the Fourteenth Amendment to the United States Constitution;

   b. Violation of his right under the Eighth Amendment to be free from cruel and unusual punishment;

6

attempted to file grievances multiple times about the incident and Sorrell's threats against reporting.

34. He filed a report with the Inspector General's office on February 4, 2011.

35. His grievances were denied based on being untimely.

36. Mr. Jean grieved these denials based on the mitigating circumstances, specifically on the fact that he was physically and sexually assaulted by an officer and civilian employee at Attica, and that the same officer continued to threaten his life and safety if he reported the incident.

37. In its denial of his grievance appeals, the CORC specifically referred to the ongoing Inspector General's investigation.

38. On October 4, 2011, Krauss was arrested and arraigned on charges of Criminal Sexual Act in the Third Degree (E Felony); Sexual Abuse in the Second Degree (A Misdemeanor) and Official Misconduct (A Misdemeanor).

39. Mr. Jean gave his shirt to the Inspector General's office, which matched the DNA on the shirt to a sample submitted by Krauss during the investigation.

40. On February 7, 2012, Krauss pleaded guilty to Sexual Abuse in the Second Degree and Official Misconduct.

41. Defendant Sorrell, upon information and belief, faced no disciplinary or criminal charges.

42. At no time prior to or during the assault did Mr. Jean make any aggressive gesture toward any officer or supervisor or present any risk of harm to any officer or supervisor.

43. The defendants failed to intervene to prevent the assault on, or prevent further

    c. Physical pain and suffering;

    d. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, fright, horror, grief, shame, depression, loss of sleep, and increased levels of anxiety.

    e. Deprivation of his liberty.

FIRST CAUSE OF ACTION
United States Constitutional
Eighth Amendment Prohibition on Cruel and Unusual Punishment

50. The above paragraphs are here incorporated by reference.

51. Defendants acted under color of law and conspired to deprive Mr. Jean of his civil, constitutional and statutory rights to be free from cruel and unusual punishment under the Eighth Amendment when defendants subjected Mr. Jean to excessive force, were deliberately indifferent and failed to protect him from substantial risk of harm to his person and are liable to plaintiff under 42 U.S.C. §1983.

52. Mr. Jean has been damaged as a result of defendants' wrongful acts.

WHEREFORE, Mr. Jean demands judgment against the defendants, jointly and severally, as follows:

A. In favor of Mr. Jean in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding Mr. Jean punitive damages in an amount to be determined by a jury;

C. Awarding Mr. Jean reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Mr. Jean demands a trial by jury.

DATED:  May 15, 2013
        Brooklyn, New York

TO:

JOSEPH KRAUSS
121 Market Street
Attica, NY 14011

CORRECTION OFFICER
NATHAN SORRELL
Attica Correctional Facility
Attica, NY

Respectfully yours,

By: Cynthia H. Conti-Cook
Bar# CC0778
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue 3rd Floor
Brooklyn, NY 11217
(718) 852-3710
(718) 852-3586
cconti-cook@stollglickman.com